## Austin *v.* Burbank.

### In the Court below,

TIMOTHY BURBANK and WILLIAM BRADLEY, *Petitioners :*
MARY AUSTIN, JAMES AUSTIN, THADDEUS R. AUSTIN,
MARY EWING, MEHITABEL AUSTIN, OLIVER L. PHELPS,
HORACE AUSTIN, RODERICK AUSTIN, CALVIN AUSTIN,
GIDEON FAIRMAN, and DELIGHT FAIRMAN his wife, and
JONATHAN AUSTIN, *Respondents.*

An assignment of the mortgage *debt,* without a conveyance of the legal title to the mortgaged premises, is sufficient to entitle the assignee to sustain a petition for foreclosure. Where a mortgage deed was given to secure a bond to the treasurer of the state, payable on demand, with interest payable on the 2d of September annually, it was held, that any delay of payment was a forfeiture of the bond ; and that the mortgagee, or his assignee, might sustain a petition for foreclosure, without shewing a special demand.

**T**HIS was a petition in chancery against the representatives of *Seth Austin,* deceased, for the foreclosure of their equity of redemption in certain mortgaged premises.

The petition stated, That on the 28th of March, 1803, *Seth Austin,* then in full life, since deceased, mortgaged his farm of land in Suffield to the State of Connecticut ; and by the condition of the mortgage deed, it was provided, that said *Austin* should, without delay, pay the principal and interest of a certain bond by him executed, of that date, for the sum of $4,000, payable to the Treasurer of the State, and his successors in office, on demand, with interest payable on the 2d day of September annually : That the respondents on the 28th of July, 1806, purchased the aforesaid mortgage of the State ; and, at that time, *Andrew Kingsbury,* Esquire, then Treasurer of the State, transferred and assigned to them said mortgage, by an assignment in usual form indorsed on the bond, and, by a deed of release and quit-claim, in usual form, and duly executed, thereby describing and conveying to them the aforesaid farm of land ; which deed of mortgage and release were recorded in the proper office : That by the means aforesaid, the interest of

the State in said lands was conveyed to, and vested in, the petitioners. And that no part of the principal and interest of said bond had ever been paid, although often requested and demanded.

To this petition the respondents, confessing the assignment and transfer of the bond to the petitioners, pleaded, that the interest arising on the bond, viz. $240 had been paid to the acceptance of the Treasurer of the State, and the managers of the school-fund ; and the same was, before the assignment of the said bond to the petitioners, indorsed in full thereon, up to the 2d of September, 1805 : That on the 2d of September, 1806, the respondents tendered the petitioners $240, in satisfaction of the interest due on the bond, which the petitioners have since received : And that before the service of the petition, no demand had ever been made of the principal sum of $4,000.

To this plea the petitioners demurred ; and the Superior Court adjudged the same insufficient.

The respondents then made answer, denying the facts stated in the petition.

The Superior Court, found all the facts stated in the petition to be true, except that they did not find, that the title of the land was conveyed to the petitioners, by said deed of release from the Treasurer of the State ; and found due on the mortgage $4,122 ; and decreed, that the same and interest should be paid in two years, and on failure, that the respondents should be foreclosed.

*Ingersoll*, for the plaintiffs in error contended, that the judgment ought to be reversed,

1. Because no demand was made of the money previous to the commencement of the suit.

2. Because no legal title to the mortgaged premises is found in the petitioners; and an equitable title only is not sufficient.

*Bradley*, for the defendants in error.

The object of this plea is to show, that the interest annually due upon this bond has been paid; that the principal has never been demanded; and that so the condition of the mortgage deed has not been broken.

But, it is stated in the petition, and admitted by the plea, that the bond was payable on demand, with interest payable on the 2d of September, annually. A bond payable on demand is due instantly; and a suit may be brought immediately, without any special demand, the general allegation of " often requested" being sufficient. And such suit can be maintained only upon the ground, that the condition of the bond has been broken; for a suit can never be supported upon a contract which has been performed, or before the time of performance has arrived. And if a suit could be sustained upon this bond immediately, without any special demand, upon the ground that the condition of the bond had been broken; then the condition of the deed is broken also; and an action of ejectment for the land, on a petition to foreclose the equity of redemption, would have lain immediately.

If this money was not payable immediately, without a special demand, still the mortgagor could not have a longer time than his life, in which to pay it; and because he did not in his life time pay the money, the condition of the deed is broken. (*a*)

But again; by the condition of the bond the interest is to be paid annually, on the 2d of September; and it is alleged

(*a*) 1 *Root* 346, *Alsop v. Hall. Co. Litt.* 208 *b.*

in the petition, that nothing has been paid upon the bond. The plea states, that the interest arising on said bond (viz.) $240 has been paid to the satisfaction of the Treasurer and the managers of the school-fund ; and that the same was, before the assignment of the bond, indorsed in full thereon, up to the 2d of September, 1805. The plea does not allege, that any interest was paid at the time it fell due ; but, if not paid then, the condition of the bond was broken ; and, for this purpose, it might as well never have been paid. (b)

The expression " indorsed in full" means, that the whole sum of $240 was indorsed ; and not, that the whole interest due on the bond, on the 2d of September, 1805, was paid and indorsed. The plea states, that $240, was paid and indorsed ; but that sum would not be in full for the interest due, at that time, on the bond :—the interest then due was $583 34 ; and it is a rule without exception, that payment of a less sum cannot be pleaded in full of a greater, except the payment was made under an accord ; and in this case no such accord is stated.

A second point, made in this case is, that the petitioners are not vested with the legal estate.

But a right to the money secured by mortgage, though not coupled with the legal estate in the lands mortgaged, is a sufficient title in the petitioner, on which to found a decree of foreclosure ; and this appears from the leading doctrines of equity on the subject of mortgages.

That the legal title cannot be drawn in question on a bill to foreclose was solemnly decided by the Superior Court, in the case of *Owen v. Granger, Hartford County, February term,* 1802. (c)

(b) *Esp. Dig.* 210.
(c) See 2 *Pow. on Mort.* 1043, *fourth Lond. edit.*

An executor or administrator of a mortgagee in fee, is entitled to foreclose the mortgagor, and receive the money or land ; and if the heir obtains a release from the mortgagor, he becomes a trustee to the executor. (d) A subsequent mortgagee, the legal title being in a first mortgagee, may, notwithstanding, foreclose the mortgagor, and all incumbrancers subsequent to himself, which was done in the case before cited of *Owen* v. *Granger.*

To the person applying having right to the mortgage money without the legal estate in the land, it is the constant practice of a court of chancery to decree a foreclosure : this was done, by the whole court, at the *September Term,* in 1806, of the Superior Court, in *Hartford County,* in the case of *Williams* v. *Smith and Shelden.*

The person holding the mere legal estate is, in all cases, the trustee of him who has right to the mortgage money ; and although he may have gained a release of the equity of redemption from the mortgagor, this will not protect the legal estate in his hands. (e)

*Ingersoll,* in reply.

1. The petitioners shew what the bond was, and that it was payable *on demand.* The respondents shew, that it was given for the school fund. It follows then, by the law relative to this fund, that it should lie, and not be enforced. And, if any event should render it expedient to collect the debt, a special demand must be made.

As to the interest due on the bond, it appears to have been paid, and indorsed on the bond. It is immaterial what the sum was ; sufficient it is, that it was received in full.

(d) 2 *Pow. on Mort.* 686 to 692.
(e) 1 *Root* 248, *Lawrence* v. *Knap and Menzey.*

2. But the principal question is, whether before the *legal title* is obtained, the plaintiffs may foreclose ? He contended strongly, that this could not be done ; that an equitable title is not enough.

The Superior Court may have decided the point ; in many instances they have gone too far ; and we come here to obtain a correction of their errors.

In the case of *Owen* v. *Granger*, the title of *Owen* was a *legal title* ; at least there was an authentic deed : and his title would be indisputably legal, on his extinguishing the prior right of the prior mortgagees.

The case in *Root's* Reports turned on this point, which should hold——the assignees who had the equitable title, and who could compel the legal title at pleasure, or the creditors. But that is inapposite to this case.

The other cases cited go on the ground, that you shall not dispute the title of the mortgagee ; but he must shew title in his petition.

So the mortgagor, when sued by the mortgagee, shall not dispute his title, if he has estopped himself by his covenants.

But who is to bring the bill for foreclosure ? *The mortgagee.* Suppose the Treasurer should come forward ; how could we defend against him ? If *he* has the right to foreclose, can the petitioners have the right ?

By the Court, unanimously,

The judgment was affirmed.