STOCKTON *et al. v.* HUTCHISON *et al.*

(*Nashville,* December Term, 1944.)

Opinion filed June 30, 1945.

Robt. F. Turner and Ward R. Case, both of Jamestown, for Hutchison.

R. C. Boyce, of Nashville, for Stockton.

Mr. Chief Justice Green delivered the opinion of the Court.

This is an ejectment suit in which the complainants sought to recover a small tract of land in Fentress County and to recover damages for timber removed. The chancellor decreed in their favor, his decree was affirmed by the Court of Appeals, and the defendant Stockton has filed petition for *certiorari*.

The land involved was formerly the property of P. L. Phillips. Upon the death of Phillips his administrator filed a bill to sell Phillips' land for his debts, his estate being insolvent. The land was sold, L. T. Smith was the highest bidder. He executed his two purchase money notes in accordance with the decree of sale, and the sale was confirmed to him. Later Smith executed a paper by which he assigned his bid for a valuable consideration to one Harrison and in the same paper conveyed all his right, title and interest in the land to said Harrison. Harrison paid the purchase money notes executed by Smith and the clerk and master made him a deed. Complainants derived title under this deed to Harrison.

Defendants introduced proof tending to show that in 1884 Phillips executed a deed to one Tinch covering the land involved. This deed, however, was not registered until 1941, after the bill in this case was filed. Phillips died in 1911 and the creditors' bill was filed some time after his death. The defendants claim title under this unregistered deed from Phillips to Tinch.

██ Apparently the defense stressed before the chancellor was seven years adverse possession by defendants' predecessors in title prior to the Act of 1895 which required the registration of deeds relied on as color of title. Code, Sec. 8582. The chancellor and the Court of Appeals both found this issue of fact against the defendants' and that question is not open in this Court.

By the first assignment of error in this Court defendants make the point that there was no valid transfer of Smith's bid for the land to Harrison and that the master's deed to Harrison, under which complainants claim, was not effective to pass the title.

██ ██ The decree in the suit to sell the Phillips land, the master having reported the Smith bid and the execution of the purchase money notes, recited:

"Said report being seen and understood by the Court and being unexcepted to, is in all things ratified and confirmed. It is therefore ordered adjudged and decreed by the Court that all the right, title, claim and interest of each and all of the parties to this cause in and to the tract of land described in the foregoing report, be and the same are hereby divested out of them and each of them, and vested absolutely and in fee simple in the purchaser, L. T. Smith, subject only to a lien thereon for the unpaid purchase money. When the purchase price is fully paid, the Master will execute, acknowledge and deliver to the purchaser, a deed for said land, upon the payment of the legal fee for the deed."

The argument is that this decree vested title to the land in Smith, that it could only be divested by a deed from Smith, and that the master's deed to Harrison was accordingly without effect.

Section 10594 of the Code provides: "The decree may divest the title to property, real or personal, out of

any of the parties, and vest it in others, and such decree shall have all the force and effect of a conveyance by such parties, executed in due form of law.''

This statute has been given full effect in a number of decisions by this Court collected in *Searight* v. *White Sewing Machine Co.*, 140 Tenn. 50, 203 S. W. 330. A decree vesting and divesting title duly recorded has all the force of a registered deed. *Wilkins* v. *McCorkle*, 112 Tenn. 688, 705, 80 S. W. 834; *Johnson* v. *Covington*, 148 Tenn. 47, 63, 251 S. W. 893. It follows, therefore, that the decree, from which we have quoted above, vested the legal title to this land in L. T. Smith, just as a registered deed to him from the owner would have done.

■ The instrument referred to as an assignment of Smith's bid is in these words:

"W. R. Phillips, Admr. <br> vs.        } Number 1321 <br> Jennie Phillips, et al.

''In this cause for a valuable consideration and the assumption by G. E. Harrison of payment of the purchase money notes I, L. T. Smith, do hereby transfer, assign and convey unto the said G. E. Harrison my bid upon and all my right, title and interest to the land sold to me by the Clerk and Master in the above styled cause and direct that title be vested in the said G. E. Harrison upon payment of the purchase money.

''This 22nd January A. D., 1916, in duplicate.

''L. T. Smith

"'Witness

''Travis Smith

''May Hyder.''

Smith certainly obtained good title to the land by the decree from which we have quoted. Title was divested out of Phillips and those claiming under his unrecorded

deed to Tinch. It was so held in *Wilkins* v. *McCorkle*, *supra,* under almost identical circumstances. Our registration statutes, Sections 7665, 7667 and 7668 of the Code, were there reviewed and it was held that those claiming under a decree of the chancery court ordering the sale of a grantor's land at the suit of his creditor had a better title than those claiming under a prior unregistered deed of the grantor. The suit of the administrator of Phillips' estate, that estate being insolvent, to sell his land for the payment of debts, was a suit by the administrator as a representative of the creditors.

Going back to the instrument set out above by which Smith undertook to assign his bid for the land and to transfer all his interest therein to Harrison and authorized the clerk and master to execute a deed to Harrison, this certainly estopped Smith from making any claim to the land after Harrison paid the purchase money notes. As we have seen, all title was divested out of those claiming under Phillips' unrecorded deed but they seek to rely on Smith's title as an outstanding title to the land which will bar the complainant's suit in ejectment.

Under similar circumstances this Court overruled a like contention in *Howard* v. *Massengale*, 81 Tenn. 577. It was there pointed out that the defense of outstanding title is not favored in the courts of America. That to defeat an action of ejectment the outstanding title must be a present, subsisting, operative and available title, not one reverted, barred or abandoned. This was substantially repeated in *Earnest* v. *Little River Land & Lumber Co.,* 109 Tenn. 427, 449, 75 S. W. 1122. In other words, if the holder of a title cannot set it up on his own behalf, a third party claiming from another source cannot set up such a title as outstanding. Following *Howard* v. *Massengale,* we are of opinion that

Smith had abandoned his title or relinquished it in favor of complainant's predecessor and thus authorized the clerk and master to make muniment of title to such person. Smith had abandoned his title and neither he nor the defendant can rely on it.

An argument is made based on a single sentence in *Harris* v. *Williford,* 179 Tenn. 299, 165 S. W. (2d) 582, 584, that the grantee of an unrecorded deed can be divested of his title "in one of two ways only, by a deed by the maker to an innocent purchaser, or a levy by creditors of the maker." It is contended that Smith was not a creditor of Phillips. That is true, but he was a purchaser at a creditors' sale of the Phillips land and there is nothing in *Harris* v. *Williford* that questions the title of such purchaser. If a purchaser at a creditors' sale could not obtain good title, the right of the creditor to subject the land to sale would be a vain thing. *Wilkins* v. *McCorkle, supra,* rules just the contrary of defendant's theory. See 45 Am. Jur. 510, and cases there collected.

Some other contentions are made in behalf of the defendant which we have considered but do not regard as well taken. Petition for *certiorari* denied.