**Johnny Wayne GREGG and wife, Shirley Gregg, Plaintiffs–Appellees,**

v.

**Mildred LINK, Defendant–Appellant.**

Court of Appeals of Tennessee, Western Section, at Knoxville.

Sept. 7, 1988.

Application for Permission to Appeal Denied by Supreme Court June 5, 1989.

John B. Hagler, Cleveland, for plaintiffs-appellees.

Lawrence Nickell, Jr., Cleveland, for defendant-appellant.

CRAWFORD, Judge.

This case involves the priority of recorded deeds to real estate. Plaintiffs, Johnny Wayne Gregg, and wife, Shirley Gregg, filed their complaint against defendant, Mildred Link, and sought, among other things, a decree declaring that the Link deed was invalid, that the Gregg deed was valid, and that the Greggs were vested with fee simple title to the real estate in controversy.

The record reveals the following facts pertinent to the issue on appeal.

On February 19, 1979, Ethel Prince, Johnny Wayne Gregg's aunt and Mildred Link's sister, executed a deed to plaintiffs, Johnny and Shirley Gregg, which conveyed, subject to a retained life estate, the fee simple title to certain real estate. Johnny Wayne Gregg testified that Mrs. Prince did not want her sister, Mildred Link, to know that she had transferred the property and accordingly, when Mrs. Prince gave the deed to him he put it in his safety deposit box instead of having it recorded at that time. The deed was subsequently recorded on August 5, 1985, shortly before Mrs. Prince's death. By deed executed on March 6, 1985, Mrs. Prince conveyed an undivided one-half interest in the same real estate to her sister, the defendant, Mildred Link. Mrs. Link had this deed recorded in the Register's Office on March 8, 1985. Mrs. Link testified that she had no knowledge of the deed to the Greggs until told of it by Mr. Gregg, after Mrs. Prince's death.

At the conclusion of the trial, the chancellor found that defendant, Mildred Link, was a donee of a gift and not a purchaser for value of the real property, and that the deed from Ethel Prince to the Greggs was validly delivered. The chancellor held that

the prior deed to the Greggs as donees, which was recorded last, had priority over the subsequent deed to the donee, Mildred Link, which was recorded first, and he thereupon declared the Link deed invalid.

Defendant has appealed and presents three issues for review. Defendant's second and third contentions are that the chancellor erred in finding that she was a donee and not a bona fide purchaser from Ethel Prince and that the chancellor erred in finding that there was a valid delivery of the deed from Ethel Prince to the Greggs. We will consider these issues together.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

We have examined the record and from our examination we cannot say that the evidence preponderates against the findings of the chancellor on these two issues. To the contrary, the record clearly supports the chancellor's findings that Link was a donee of Ethel Prince and that there was a valid delivery of the deed to the Greggs. These issues are without merit.

The first issue presented for review is whether the chancellor erred in holding that the prior deed recorded last has priority over the subsequent deed recorded first.

The recording statutes pertinent to the issue before the Court are T.C.A. §§ 66–26–101, 66–26–103, and 66–26–105 (1982) which we quote:

**66–26–101. Effect of instruments with or without registration.**—All of the instruments mentioned in § 66–24–101 shall have effect between the parties to the same, and their heirs and representatives, without registration; but as to other persons, not having actual notice of them, only from the noting thereof for registration on the books of the register, unless otherwise expressly provided.

**66–26–103. Unregistered instruments void as to creditors and bona fide purchasers.**—Any of said instruments not so proved, or acknowledged and registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice.

**66–26–105.—Priority of registered instruments.**—Any of said instruments first registered or noted for registration shall have preference over one of earlier date, but noted for registration afterwards; unless it is proved in a court of equity, according to the rules of said court, that the party claiming under the subsequent instrument had full notice of the previous instrument.

It is uncontroverted that Mrs. Link had no actual knowledge or notice of the deed from Mrs. Prince to the Greggs. She therefore contends that T.C.A. § 66–26–105 is controlling and her deed, as first recorded, should be given preference. She argues that her contention is supported by the decision of our Supreme Court in *Simpkinson v. McGee.* 72 Tenn. (4 Lea) 432 (1880), which considered the recording statutes derived from 1831 Tenn.Pub.Acts 90, the same statutes as set out above. In *Simpkinson,* the question for determination by the Court was the priority between a claimant under an unregistered deed and the trustee and beneficiaries under a subsequent, but earlier recorded, assignment from the same grantor to secure pre-existing debts. In holding that the subsequently dated, but earlier recorded, assignment prevailed, the Court said:

The Chancellor seems to have thought that the preference given by the Code to the instrument first registered, applied only when the claimants under it stood in the attitude of bona fide purchasers for value in the common law sense, as well as without notice, and that, as assignees under a voluntary assignment for creditors, are not such purchasers, according to the decisions, the preference could not be allowed them. The language of the next section of the Code to the one above cited, taken also from the Act of 1831, may have influenced the conclusion. That section is: "Any of said instruments not so proved or acknowledged

and registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice." The previous section gives preference to instruments in the order of registration, subject only to the condition of the want of notice of the prior equity. This section declares the effect of an unregistered instrument as against creditors and bona fide purchasers of the grantor. The two provisions, constituting sections 6 and 12 of the original Act, are not in conflict, nor does either necessarily control the other.

*Id.* at 435–36. The Court then discussed the nature of an assignment for pre-existing debts, and noting that in some cases assignees were treated as volunteers stated: "It has always been so held in this State, *when it could be done consistently with* the positive provisions or the policy of the registration laws." *Id.* at 436–38. After further discussion on this point, the Court said:

> ... there can be no doubt that an unregistered conveyance or agreement to convey must yield to a registered trust assignment for creditors, without notice, because the case *is directly within the letter* and the intent of the statute. There are cases which seem to treat the beneficiaries in such an assignment as creditors within the Code, sec. 2075 [now § 66–26–103] against whom all unregistered instruments are void: (citations omitted) Of course, a mere volunteer would stand in the shoes of his grantor, and notice to the latter would be notice to him.
>
> A creditor who takes a conveyance to secure his debt is not such a volunteer, under the registration law as construed by this Court. (emphasis supplied)

*Id.* at 438–39.

Although the Court in *Simpkinson* concluded that the recording statutes derived from the 1831 Act were unrelated, the Court also indicated that the assignees were not treated as volunteers, but considered as creditors under what is now T.C.A. § 66–26–103. In any event, *Simp-*

*kinson* has been largely ignored as precedent in construction of the recording statutes. *See,* Sewell, *The Tennessee Recording System,* 50 Tenn.L.Rev. 1 (1982).

In *Wright v. Black,* 159 Tenn. 254, 17 S.W.2d 917, (1929), May conveyed a tract of land to Wright by deed executed May 6, 1925. Wright did not record the deed until March 31, 1927. Prior to May's death on September 8, 1926, the bank had recovered a judgment against one of May's sons and after Mr. May's death the bank by execution levied on the son's undivided interest in the real estate which Wright held under the unrecorded deed. Wright filed suit in Chancery Court to enjoin the sheriff and the bank from proceeding further under the execution and the trial court denied the injunctive relief. Although the Supreme Court based its reversal of the Chancellor's ruling on the interpretation of Section 2075, Code of 1858 [now T.C.A. § 66–26–103] that the statute afforded no protection to a judgment creditor of an heir of the grantor, the Court stated:

> Thus by legislative declaration, it is only creditors of, or *bona fide* purchasers from, *the makers* of an unregistered deed who may disregard such an instrument. (emphasis in text).

*Id.* at 259, 17 S.W.2d at 918.

In *Harris v. Williford,* 179 Tenn. 299, 165 S.W.2d 582 (1942), Hood conveyed land to Harris in 1930, but Harris did not record his deed until May 11, 1940. Meanwhile, Hood died in November of 1937, and after his death, Hood's son, the only heir, conveyed the same land to Williford by deed dated April 15, 1938, and recorded June 6, 1938. By deed dated and recorded June 7, 1938, Williford conveyed to May Hood Williford and it is stipulated that both of the Willifords were bona fide purchasers without notice. Harris filed suit praying that title and right of possession be decreed to him and the deeds to the Willifords be held void and cancelled. The case turned on the determination of whether 1937 Tenn.Pub. Acts 122, [now codified as T.C.A. § 66–26–104] should be given retrospective application. The court declined to give retrospective application to the statute, and

affirmed the trial court which held the Williford deeds void. In proceeding to determine the case based on the proposed application of 1937 Tenn.Pub.Acts 122, the Court said:

> It is apparently conceded by learned counsel for defendants, appellants here, *that independent of Chapter 122, Acts of 1937*, complainant has the better title. Whatever doubt may have theretofore existed, it was definitely settled in *Wright v. Black*, 159 Tenn. 254, 17 S.W.(2d), 917, that an unregistered deed is good against all persons except (1) *bona fide* purchasers from the vendor and (2) creditors of the vendor. (emphasis supplied).

*Id.* at 301, 165 S.W.2d at 583.

The *Harris* Court's interpretation of the *Wright v. Black* holding indicates an implicit construction in *pari materia* of the recording statutes derived from the Acts of 1831 rather than as separate and divisible as stated in *Simpkinson*.

We believe this interpretation is further fortified by the language of 1937 Tenn. Pub.Acts 122, now codified as T.C.A. § 66–26–104 (Supp.1988) which states:

> **66–26–104. Rights as between transferee of decedent and purchaser from heir or devisee.**—Any such instrument entitled to registration which is not duly registered prior to the expiration of sixty (60) days following the death of the maker of any such instrument, shall be null and void as to innocent purchasers for a present valuable consideration from such person or persons as would, but for the execution of the said instrument by the decedent, succeed to the rights of the decedent to such property in respect to which such unrecorded instrument was executed; provided, however, the holder or any person entitled to the benefit of any such unrecorded instrument shall have a right of action against any such transferors for the reasonable value of any such property transferred to the extent of the interest of the holder herein if brought within one (1) year of the recording of the instrument made by such transferors, if the instrument by which

the transfer is made is required to be recorded for the protection of the purchaser under the laws of Tennessee, otherwise the action shall be brought within one (1) year from the consummation of such sale or transfer.

The legislature was quite explicit in limiting the protection of the above statute to "innocent purchasers for a present valuable consideration," even in light of our Supreme Court 1929 decision in *Wright v. Black*, wherein the Court stated that "by legislative declaration, it is only creditors of, or bona fide purchasers from, the makers of an unregistered deed who may disregard such an instrument." *Id.*, 159 Tenn. at 259, 17 S.W.2d at 917. The legislature obviously did not intend to extend the protection of the 1937 Act to grantees who were not purchasers for value without notice, nor did it take any steps to include such persons within the protection of the existing recording statutes.

In the case at bar, the trial court noted that since Mrs. Prince had made a valid gift of her property to the Greggs, she had nothing to give when she attempted to make a gift to Mrs. Link. We agree with the trial court and his reasoning is compatible with our Supreme Court's statement in *Simpkinson*, "Of course, a mere volunteer would stand in the shoes of his grantor, and notice to the latter would be notice to him." *Simpkinson v. McGee*, 72 Tenn. (4 Lea) at 439. Therefore, we hold that under our recording statutes a prior unrecorded deed will take precedence over a subsequent deed to a donee although the subsequent deed is recorded first.

Accordingly, we affirm the judgment of the trial court and remand this case for such further proceedings as may be necessary. Costs of appeal are assessed against the appellant.

TOMLIN, P.J. (W.S.), and FARMER, J., concur.